(No. 31500.—
THE PEOPLE *ex rel.* Ralph S. Armstrong, Appellant, *vs.*
WILLIAM HUGGINS *et al.*, Appellees.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

BEN ROBINSON, State's Attorney, of Galesburg, SAFFORD, KRITZER & FULTON, of Monmouth, and GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING, of counsel,) for appellant.

EUGENE D. HARDY, of Galesburg, and LOVE & BEAL, of Monmouth, (EDWARD B. LOVE, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

May 28, 1948, the plaintiff, the State's Attorney of Knox County, in the name of the People of the State, upon the relation of Ralph S. Armstrong, a qualified taxpayer of the town of Floyd, in Warren County, filed in the circuit court of Knox County a complaint or information in the nature of *quo warranto* against the defendants, William Huggins, Stanley Wolford and J. L. Wilkie, trustees of the Abingdon Fire Protection District, located

partly in Knox County and partly in Warren County. The relief sought was a judgment ousting and expelling defendants from the franchises and offices of trustees. By their first amended answer, defendants described the procedural steps incident to the organization of the Abingdon Fire Protection District, under "An Act to create Fire Protection Districts," approved July 8, 1927, as amended, (Ill. Rev. Stat. 1947, chap. 127½, par. 21,) and their appointment, on May 20, 1947, by the county judge of Knox County as members of the board of trustees for the government and control of the affairs and business of the district. Answering further, defendants averred that their actions as corporate officials constituted a user of the corporate franchise.

From the pleadings it appears that, on March 14, 1947, a petition signed by the requisite number of legal voters residing within the limits of the proposed district was filed in the office of the county clerk of Knox County. The petition, addressed to the county judge of Knox County, sought submission at a referendum of the question whether the territory described should be organized as a fire protection district under the act of 1927. On April 17, 1947, the county judge entered an order definitely describing the territory to be embraced in the proposed district and fixing its boundaries by eliminating part of the territory described in the petition. The order specifically found that the territory is contiguous and does not contain any territory previously or then included in any other fire protection district, and that Knox County contains the largest portion of the proposed district, both as described in the petition and as fixed by the court. The order directed that the question of the organization and establishment of the proposed district, as determined by the county judge, be submitted to the legal voters of the proposed district at a special election on May 17, 1947. This was done, and, on May 20, 1947, an order was entered declaring the terri-

tory described by the county judge in his order of April 17, 1947, an organized fire protection district, and appointing defendants as its trustees. They qualified on July 3, 1947, and assumed the duties of their offices.

Plaintiff made a motion to strike the first amended answer, making the charges, among others, that the Fire Protection District Act, as amended, violates article III and section 1 of article IV of our constitution, and contravenes the first section of the fourteenth amendment to the Federal constitution and the complementary provisions of section 2 of article II of the State constitution.

July 16, 1949, an order was entered striking defendants' first amended answer upon the ground that the Fire Protection District Act, as amended, purports to confer legislative functions on a judicial officer, thereby attempting to authorize the judicial department to exercise the powers properly belonging to the legislative department, in violation of article III of our constitution, and, also, constitutes an unwarranted delegation of legislative power in contravention of section 1 of article IV. Defendants, electing to abide by their pleading, were adjudged guilty of usurpation of the franchises and offices of trustees of the Abingdon Fire Protection District, and ousted and prohibited them from exercising the functions, privileges and prerogatives of the franchises and offices of trustees of the district.

On August 15, 1949, defendants made a motion to vacate the judgment of ouster of July 16, 1949, alleging that, subsequent to its entry, namely, on August 10, 1949, the Governor approved two acts of the General Assembly validating, ratifying, confirming, approving and declaring legal the creation of fire protection districts organized under the provisions of the Fire Protection District Act of 1927, as amended; declaring them bodies corporate and politic, and legalizing their acts and proceedings. Their motion set out *verbatim* the two statutes, hereafter referred

to as House Bill No. 1005 (Laws of 1949, p. 1497,) and House Bill No. 1006, (Laws of 1949, p. 1496,) and, in addition, alleged approval on July 27, 1949, of a third act, House Bill No. 1007, (Laws of 1949, p. 1484,) amending the Fire Protection District Act of 1927, and that, irrespective of whether the act of 1927 was constitutional prior to the amendments made by House Bill No. 1007, the act, as amended on July 27, 1949, is a valid and constitutional act for the operation of fire protection districts in the State.

Plaintiff filed a motion to strike defendants' motion to vacate the judgment of ouster, alleging that the two curative acts approved August 10, 1949, were unconstitutional in the various respects enumerated and that the act approved July 27, 1949, is prospective in its application and without force and effect to validate the acts and proceedings by which an attempt was made to create the Abingdon Fire Protection District. Defendants were permitted to file an amendment and supplement to their first amended answer setting forth the enactment and approval of House bills Nos. 1005, 1006, and 1007. Plaintiff made a motion to strike defendants' supplement and amendment upon the same grounds urged in its motion to strike defendants' motion to vacate the judgment of ouster entered July 16, 1949. On November 16, 1949, the court found that the motion to strike the supplement and amendment to the first amended answer raised the question of, and placed in issue, the constitutional validity of the acts approved August 10, 1949, and that a determination of the validity of these statutes was necessary to a decision of the case, and that the statutes are valid and constitutional. Thereupon, a judgment was rendered adjudging that the Abingdon Fire Protection District is and has been continuously since May 17, 1947, a duly organized and validly existing municipal corporation under the laws of the State, and that defendants are and have been since July 3, 1947, the duly ap-

pointed, qualified and validly acting trustees of the ·district. From this judgment, plaintiff prosecutes this appeal, a franchise being involved, within the contemplation of section 75 of the Civil Practice Act. Ill. Rev. Stat. 1949, chap. 110, par. 199.

Section 1 of the challenged statute, as it obtained in 1947, authorized the creation of fire protection districts for the prevention and control of fire therein. Districts could be incorporated in the detailed manner described. A petition signed by fifty or more of the legal voters resident within the limits of the proposed district, or a majority thereof if less than one hundred, was required to be presented to the county judge of the county which contained all or the largest portion of the proposed district, requesting submission to the legal voters of the proposed district of the question whether the proposed territory should be organized as a fire protection district. The petition, it was provided, should contain "a definite description of the boundaries of the territory to be embraced in the proposed district," and its name. With respect to the territory to be included in a proposed fire protection district, section 1, to the extent relevant, declared that the territory incorporated in any district should be contiguous and might contain any territory not previously included in any fire protection district. Upon the filing of a petition in the office of the county clerk of the county in which the petition was made, the statute ordained, "It shall be the duty of the county judge to consider the boundaries of any such proposed fire protection district whether the same shall be those stated in the petition or otherwise." The word "boundaries" refers to the requirements for describing boundaries in the preceding paragraph of section 1. Detailed requirements were prescribed with respect to notice by the county judge of the time and place of a hearing upon the subject of the petition. Section 1 provided, further, that, at the meeting, the county judge should preside;

that all persons in the proposed fire protection district should have an opportunity to be heard touching, and to make suggestions regarding, the location and boundary of the proposed district, and that the judge, after hearing statements, evidence and suggestions, "shall fix and determine the limits and boundaries of such proposed district, and for that purpose and to that extent, may alter and amend such petition." The purpose of having a hearing on the location and boundary of the district was for the stated purpose of the statute, namely, "the prevention and control of fire" in fire protection districts. Section 1 continued, "After such determination by said judge the same shall be incorporated in an order which shall be spread at length upon the records of the County Court. Upon the entering of such order the county judge shall submit to the legal voters of the proposed fire protection district the question of organization and establishment of the proposed fire protection district as determined by said judge," at an election to be held within a specified period of time. The form of ballot to be used at the election was set forth, and provisions were made for establishing and fixing boundaries of voting precincts.

Plaintiff earnestly contends that the statute violates article III and section 1 of article IV of the State constitution upon the ground that its provisions constitute an unwarranted and void delegation of legislative power to county judges. By article III the powers of government of this State are divided into three separate and distinct departments. Each department is to perform the duties assigned to it and no department may exercise the powers properly belonging to either of the other two. (*Saxby* v. *Sonnemann,* 318 Ill. 600.) A statute which vests a discretion not only as to the administration of the enactment but, also, the determination of what the law is, or whether to apply it to one and not to another in like circumstances, constitutes an unwarranted delegation of legislative au-

thority. (*Owens* v. *Green*, 400 Ill. 380.) Conversely, the legislature may delegate to others the power to do those things which it might properly but cannot understandingly or advantageously do itself, and it may confer authority or discretion as to the execution of the law, to be exercised under and in pursuance of the law. *People ex rel. Barrett* v. *Logan County Building and Loan Ass'n*, 369 Ill. 518; *Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *Welton* v. *Hamilton*, 344 Ill. 82.

Recourse to the provisions of the Fire Protection District Act discloses that the challenged act is patterned on the Sanitary District Act of 1889. The procedure and verbiage are, for the most part, duplicated not only in the act of 1889 but also in the Sanitary District Act of 1907, (Laws of 1907, p. 289,) the Sanitary District and Sewage Disposal Act of 1917, (Laws of 1917, p. 396,) and the River Conservancy Act of 1925. (Laws of 1925, p. 346.) Objections to the constitutional validity of these statutes have been raised from time to time, commencing with an attack upon the Sanitary District Act of 1889 in *People ex rel. Longenecker* v. *Nelson*, 133 Ill. 565. The statute, "An act to create sanitary districts, and to remove obstructions in the Des Plaines and Illinois rivers," provided for the creation of sanitary districts comprising certain areas of contiguous territory, and empowering the districts to construct and maintain a common outlet for the drainage and sewage in their respective territories. Section 1 of the Sanitary District Act provided that, after the filing in the office of the county clerk of a proper petition for the organization of a sanitary district, "it shall be the duty of the county judge to call to his assistance two judges of the Circuit Court, and such judges shall constitute a board of commissioners which shall have power and authority to consider the boundaries of any such proposed district, whether the same shall be described in the petition or otherwise." The corresponding language of the Fire Pro-

tection District Act is that, at a hearing upon the subject of a petition to cause the question of the organization of a fire protection district to be submitted to the electorate, "The county judge, * * * after hearing statements, evidence and suggestions, shall fix and determine the limits and boundaries of such proposed district, and for that purpose and to that extent, may alter and amend such petition." The Sanitary District Act provided, further, for the meeting of the commissioners constituted as described, for publication of the time and place of the meeting, and that the county judge should preside at such meeting. Strikingly similar to the provisions of the Fire Protection District Act are the additional provisions of section 1 of the Sanitary District Act that all persons in the sanitary district shall have an opportunity to be heard touching the location and boundaries of the proposed district, and to make suggestions regarding them, and that the commissioners, after hearing statements, evidence and suggestions, shall fix and determine the limits and boundaries of the proposed district, and, for this purpose and to this extent, may alter and amend the petition. The statute also provided that, after the determination by the commissioners, the county judge should submit to the legal voters of the proposed district the question of its organization and establishment, as determined by the commissioners, at an election to be held on the day specified.

One objection leveled against the Sanitary District Act was that, in providing the machinery for the organization of sanitary districts, it imposed upon the judge of the county court and two of the judges of the circuit court duties incompatible with their functions and duties as judges of those courts. The point urged was that the statutory provisions previously described imposed upon the county judge and the two circuit judges performance of executive or ministerial duties, and that, in consequence, the statute transcended article III of our constitution, and,

further, that if the duties were judicial in character, the act created a new judicial tribunal unknown to the constitution and, hence, was in conflict with section 1 of article VI which exhausts all of the judicial power of the State by dividing it among certain courts therein specifically enumerated. Answering the objections, this court said, "But we are not prepared to hold that the duties imposed by said act upon said judges are necessarily incompatible with their duties as judges of the Circuit and County Courts. So far as the act commits to the County Court the political function of selecting the two judges of the Circuit Court who constitute the other two members of the commission, the principle is in no respect different from that involved in a variety of other cases in which statutes imposing analogous duties upon judicial officers have been held to be constitutional. Thus, the statute giving the Circuit Court of Cook county the power to appoint the commissioners for the South Park has been held to be constitutional. [Citations.] So, also, the provisions of the drainage laws giving the County Courts the power to appoint drainage commissioners have been held valid. [Citations.] The same is true of those provisions of the Election Law of 1885, giving the County Court power to appoint election commissioners. [Citation.]

"Nor are the duties imposed upon said commissioners, when selected, necessarily incompatible with their duties as judges. As said by this court in discussing a similar provision of the Constitution of 1818: 'It does not mean that the legislative, executive and judicial power should be kept so entirely separate and distinct as to have no connection or dependence, the one upon the other; but its true meaning, both in theory and practice, is, that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. That this is the sense in which this maxim was understood by the authors of our government, and those of the general and

state governments, is evidenced by the Constitutions of all. In every one, there is a theoretical or practical recognition of this maxim, and at the same time a blending and admixture of different powers.' *Field* v. *The People, 2* Scam. 79. To same effect see, *Owners of Lands* v. *The People,* 113 Ill. 296, and *People* v. *Hoffman,* 116 Ill. 587.

"We may refer, by way of illustration, to those provisions of our statutes which confer upon judges the power to take the acknowledgment of deeds and to solemnize marriages, powers which, though non-judicial in their nature, have never been supposed to be incompatible with the judicial office. * * *

"In this country, all corporations, whether municipal or otherwise, are created, either directly or indirectly, by legislative act, and it follows, therefore, that the creation of corporations belongs to the legislative department of government. But before the legislative power can be intelligently exercised in the creation of a municipal corporation, it becomes necessary for the legislative department, as a matter preliminary to its action, to be advised, in some mode, as to the proper territorial boundaries of the corporation which it contemplates organizing. For this purpose it may call to its aid any agency it may see fit to employ, but its doing so is no delegation of legislative power. The judges who are selected to constitute a commission for that purpose are no more vested with legislative functions, than are the judges of the several courts of record by the constitutional provision which requires them to report to the Legislature the defects and omissions they may discover in existing laws."

Thereafter, in *People ex rel. Village of South Chicago Heights* v. *Bergin,* 340 Ill. 20, this court, declining to consider the contention that the Sanitary District Act of 1917 contravened section 1 of article IV of the constitution as an unwarranted delegation of legislative power or the contention that it violated article III in conferring upon judi-

cial officers legislative functions, said, "These questions are no longer open in this court."

In *People ex rel. Taylor* v. *Camargo Community Consolidated School Dist.* 313 Ill. 321, the contention, among others, was made that section 84(g) of the School Law, as amended in 1923, which authorized the detachment of an entire common school district from a community consolidated school district, violated article III of the constitution in permitting territory to be detached from the consolidated school district by the county superintendent and the legal voters of the district, thereby conferring legislative, judicial and executive powers upon the voters of the district. This court replied, "It is not the exercise of either legislative, executive or judicial power for the inhabitants of any territory to avail themselves of the privilege of organizing a school district in accordance with the authority conferred by a statute which specifies with particularity the rules and conditions under which the organization may be made."

The plaintiff places reliance, however, upon *Kenyon* v. *Moore*, 287 Ill. 233, *North* v. *Board of Education of Community High School Dist.* 313 Ill. 422; *People ex rel. Bensenville Community High School Dist.* v. *Rathje,* 333 Ill. 304, and *Welton* v. *Hamilton,* 344 Ill. 82. In each of the first three cases cited, the challenged statute delegated arbitrary discretion in express terms. Apart from this, each statute, with a single exception, related to schools. Illustrative is *Kenyon* v. *Moore,* 287 Ill. 233, holding section 89 of the general School Law, as amended in 1917, invalid. This section provided for the organization of a community high school district initiated by a petition which the county superintendent of schools could deny, "if in his judgment the proposed district does not meet the requirements heretofore specified in this section." The statute provided, further, that, in forming these high school districts, existing school districts should not be divided by high school district boundaries, "except where in the judg-

ment of the county superintendent of schools of the county in which the larger part of the proposed high school district lies, it is necessary in order to make a compact and satisfactory high school district." Obviously, unlimited discretion was expressly granted and adequate standards to guide the county superintendent were lacking. As this court observed, "It is an arbitrary discretion and renders the section invalid because it delegates legislative powers to the county superintendent and of the opportunity it affords for unjust discrimination." The statute involved in *Kenyon* v. *Moore* has but little resemblance, if any, to the statute assailed in the present case. Here, the Fire Protection District Act does not delegate power to county judges to make the law, which involves a discretion as to what the law shall be but, instead, merely confers an authority or discretion upon county judges as to its execution, to be exercised under and conformably to the law itself.

In *North* v. *Board of Education,* 313 Ill. 422, section 89(g) of the School Law provided for the detachment of territory from a high-school district and authorized its attachment to a non-high-school district. Upon the presentation of a proper petition to the judge of the circuit court in vacation, or to the court in term time, of the county in which the district or the major part thereof lies, power to detach, or to deny the petition, was granted to the judge, or the court, "If in his or its opinion, the said territory, or any part thereof, sought to be detached is not properly a part of said community high school district." This court said, "It is difficult to conceive of an act more clearly unconstitutional than said section 89(g)." In the case at bar, the county judge is not vested with authority to fix the boundaries of a district according to "his judgment" or, as in *North* v. *Board of Education,* "in his * * * opinion."

In *People* v. *Rathje,* 333 Ill. 304, section 91(a), added to the School Law in 1927, created an *ex officio* board

composed of the chairman of the county board of supervisors or board of county commissioners, the county judge and county clerk. This board, the statute declared, "may in its discretion change the boundaries of any township or community high school districts." The power to make the change under this statute was left to the arbitrary discretion of the *ex officio* board and was, clearly, "a delegation by the legislature of its legislative functions to the officials in question" and, therefore, invalid.

Observation should be made that the duties and powers of the General Assembly in school matters are so sweeping in scope that where issues involve the constitutional validity of statutes permitting the creation of school districts, judicial review is narrowly limited. (*People* v. *Deatherage,* 401 Ill. 25.) Implicit in the decisions in *Kenyon* v. *Moore, North* v. *Board of Education,* and *People* v. *Rathje* is a stricter application of the basic rules of nondelegation of legislative power where statutes relating to the organization of school districts and to changes in their boundaries are involved than where other public corporations are involved. *People* v. *Deatherage,* 401 Ill. 25; *People* v. *Nelson,* 133 Ill. 565.

*Welton* v. *Hamilton,* 344 Ill. 82, also relied upon by plaintiff, is not a school case. The statute under attack purported to confer on the city councils of cities the power to create a board of appeals in zoning matters and to confer on these boards certain powers specifically described. According to the Zoning Act, as amended in 1923, "The regulations by this act authorized, may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained." The act was held to be an arbitrary and unconstitutional delegation of legislative functions to an administrative body. The Fire Protection District Act does not purport, expressly or

impliedly, to vest unlimited and unguided discretion of the character granted in *Welton* v. *Hamilton.*

Almost inseparably connected with the question of delegation of legislative power to the judiciary is the other principal constitutional issue made and argued by the parties, namely, that the statute offends the constitutional guaranties of due process. Plaintiff incorrectly asserts that the Fire Protection District Act empowers the county judge to arbitrarily change the boundaries described in the petition. This statement is predicated upon the erroneous assumption that the only statutory restraints in this regard are the requirements that the territory to be included in the proposed district be contiguous and not include any territory previously included in any other fire protection district. Defendants maintain that there are sufficient standards in the statute to which the county judge can be compelled to conform in determining the boundaries.

The rule is firmly established that statutes either forbidding or requiring the doing of an act in terms so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application do not constitute due process of law. (*Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *Mayhew* v. *Nelson,* 346 Ill. 381.) Where, however, the words assailed, taken in connection with the context, are commonly understood, their use does not render a statute invalid. (*Triner Corp.* v. *McNeil,* 363 Ill. 559.) Moreover, the General Assembly need not define words in common and daily use. *City of Chicago* v. *Alpert, Inc.* 368 Ill. 282; *People* v. *Lloyd,* 304 Ill. 23.

In the present case, the words "fire," "fire protection," and the expression "prevention and control of fire" are commonly understood terms with meanings so well defined that further definition would be superfluous. Section 1 sets forth standards to guide the county judge in making his determination of the boundaries of a fire protection district.

The legislative purpose is explicitly stated in the first sentence of the section which ordains that fire protection districts may be incorporated "for the prevention and control of fire therein." A petition calling for the establishment of such a district must be signed by a prescribed number of voters and contain a "definite description" of the boundaries of the territory to be embraced in the proposed district. The statute also requires that the territory incorporated in any district formed thereunder shall be "contiguous" and may contain any "territory not previously included" in any fire protection district. The word "contiguous" does not require a statutory definition. Having made these express provisions, the statute then imposes the duty upon the county judge of considering the boundaries, his consideration necessarily being based upon the preceding provisions. The statute makes detailed provision with respect to notice of a hearing upon the petition and affords all persons in the proposed district the opportunity of being heard and making suggestions with respect to the boundaries. This provision necessarily means that they are to be heard and permitted to make suggestions to the end that the boundaries conform to the preceding statutory requirements, namely, that the territory of the district be contiguous and that it may contain territory not previously included in another fire protection district and, further, to make certain that the boundaries of the district are so located as to effectuate the objective of the act, namely, "the prevention and control of fire therein." In short, clear-cut standards are prescribed to guide the county judge in making his determination as to the boundaries of the district. He is not granted unbridled or unfettered discretion in this respect. Instead, he must follow the standards fixed by the statute when he makes his determination of the boundaries of the proposed district. Among additional standards prescribed by section 1 and the succeeding seventeen sections are that the judge must fix the boundaries in

such manner as to exclude cities or villages which have acted to preclude their inclusion. Furthermore, the boundaries fixed by the judge are subject to a referendum which must carry within cities, villages and incorporated towns, as well as outside their limits.

Admittedly, the county judge changed the boundaries described in the petition. He did not enlarge the size of the proposed district; its area was reduced rather than enlarged. This being so, plaintiff cannot be said to have been aggrieved by the actual exercise of the asserted delegated authority or discretion to determine or change boundaries. (*City of Elmhurst* v. *Buettgen,* 394 Ill. 248.) In the absence of error affirmatively appearing, a presumption of regularity obtains relative to the proceedings incident to the organization of the fire protection district and the determination of its boundaries. (*City of Chicago* v. *Rose Hill Cemetery Co.* 349 Ill. 619; *People ex rel. Nourie* v. *Drainage Dist.* 235 Ill. 278.) Specifically, the presumption is that the action of the county judge in this regard, namely, in changing boundaries, was neither arbitrary and capricious nor beyond the standards of the statute but, instead, conformed to them.

A similar situation obtained in *Perkins* v. *Board of County Comrs.* 271 Ill. 449, where the constitutionality of the Forest Preserve Act of 1913, the provisions of which are similar to those of the Fire Protection District Act, was presented for decision. Section 1 provides for a hearing by the circuit judge of the county in which the proposed district lies upon a petition initiated for the organization of a forest preserve district. As in the Sanitary District Act, provision is made that the circuit judge shall set the day and hour for a public consideration of the petition at which any property owner in the proposed district may appear and be heard. If the judge finds that all of the provisions of the statute have been satisfied, he shall cause an order to be entered fixing and defining the boun-

daries and name of the district in accordance with the prayer of the petition. If more than one petition is filed in the same county before the time fixed for the hearing of the first petition, the public consideration of the first petition, the statute declares, shall be postponed and the hearing on all petitions set for the same day and hour, and if it shall be found that any of the territory embraced in the petitions is included in or contiguous to the territory embraced in any other petition the judge may include all of the territory described in such petitions in one district, and enter an order fixing and defining the boundaries of the proposed district and order the question of its organization submitted to the electors. To the contention that the Forest Preserve District Act was so vague, uncertain and indefinite in its terms as to render it incapable of execution, this court answered, "But few, if any, laws are ever enacted which are not subject to some criticism or capable of some improvement. The question as to whether or not a better law might have been enacted is for the legislature and not for the courts, and criticisms against the wisdom, policy or practicability of a law are subjects for legislative consideration and not for the courts." Somewhat summarily it was held that the statute did not offend constitutional guaranties because of vagueness, uncertainty or indefiniteness in its terms.

*Krebs* v. *Thompson,* 387 Ill. 471, held unconstitutional "An Act to regulate the practice of professional engineering," which provided for registering any "professional engineer" who, in the opinion of an examining committee appointed by the Director of the Department of Registration and Education, had satisfactorily met all of the requirements of the act. The requirements to be satisfied were left to the opinion and discretion of the committee, without any statutory standards or requirements to serve as a guide in the formation of its opinion as to what the requirements

of the act were. The statute before us in *Krebs* v. *Thompson* delegated arbitrary discretion of an inherently legislative character to the examining committee and failed to define terms which should have, without question, been defined. It does not follow that because the word "engineer," as noted, "includes everything, but defines nothing," the words "fire" and "fire protection" and the term "prevention and control of fire" are subject to the same criticism.

In *People ex rel. Duffy* v. *Hurley,* 402 Ill. 562, amendments to the City Civil Service Act providing for military credits were declared invalid as an illegal delegation of legislative power to administrative officers. We deem sufficient the comment that the statute before us in the *Hurley case* was far from parallel to the Fire Protection District Act.

We are of the opinion that the Fire Protection District Act, as amended, does not violate either the Federal or the State constitution in the respects charged and, specifically, that it does not delegate legislative power to county judges in contravention of the constitution of this State nor constitute a denial of due process, within the contemplation of either Federal or State constitutional guaranties.

Our conclusion renders unnecessary a consideration of the constitutional validity of the two curative acts (House Bill No. 1005 and House Bill No. 1006) approved August 10, 1949, and the construction of the third act, (House Bill No. 1007) approved July 27, 1949.

The judgment of the circuit court of Knox County that the Abingdon Fire Protection District is and has been since May 17, 1947, a duly organized and validly existing corporation rests upon a different basis than does our decision. Irrespective of the reasons assigned, the judgment of the circuit court of Knox County is right, and it is affirmed.

*Judgment affirmed.*