James Baird, Adm'r of the Estate of Debra Lynn Baird, Deceased, *et al.*, Plaintiffs-Appellees, *v.* Chicago, Burlington and Quincy Railroad Company, Defendant-Appellant.

(No. 12926;

Fourth District—September 17, 1975.

*Rehearing denied October 17, 1975.*

GREEN, J., dissenting.

Graham & Graham, of Springfield, for appellant.

Gillespie, Burke & Gillespie, P. C., of Springfield, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiffs, James Baird, as administrator of the estate of Debra Lynn Baird, deceased; and John E. Massich, as administrator of the estate of Michael E. Massich, deceased, brought action in the circuit court of Sangamon County against defendant Chicago, Burlington and Quincy Railroad Company, a corporation, now Burlington Northern, Inc., a corporation, pursuant to section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1967, ch. 70, par. 2) for the death of their respective decedents. At the first trial, the jury returned verdicts in favor of the plaintiffs in the sum of $100,000 each. On appeal from judgment entered on those verdicts, this court in *Baird v. Chicago, Burlington & Quincy R.R. Co.*, 11 Ill.App.3d 264, 296 N.E.2d 365, reversed and remanded for a new trial only as to the question of damages. We ruled that an instruction given

improperly permitted the jury to award punitive damages. At the retrial, the jury returned verdicts in favor of each plaintiff in the sum of $188,-000. From judgments entered on those verdicts, defendant again appeals.

At the time of her death, Debra Lynn Baird was a 17-year-old high school junior. The evidence is undisputed that she was in good health, active in school and church affairs and aspired to be a special education teacher. She lived on a farm with her parents who were both 45 years of age at the time of the trial. She was an obedient girl who helped both parents, cared for her younger brother and was generous in her gifts to the family. She had done well in her summer job at the McFarland Zone Center where she worked with retarded children. She was known for her compassion to both children and older people and often did baby-sitting, refusing pay.

Michael E. Massich, who was 19 years old at the time of his death, had lived with his grandmother since he was 17 months old. His father, who survives, was 53 years old at the time of the trial. Michael was also a helpful, obedient, religious person. He was a straight "A" student in high school, participated in football and track and was valedictorian of his class. In the school year prior to his death, he attended the University of Illinois where he received a "C" average in the difficult chemistry and engineering curriculum while at the same time working to partially support himself. His father had saved money for the boy's education but Michael refused to accept it and took out a loan to supplement what he could earn himself. Since he was a youngster the boy had given his father money for a birthday present and upon the father's birthday prior to the son leaving for college he gave him $50 as a present. The father testified that Michael had promised to build a house for him and to take care of him after he retired.

Dr. Leo Cohen, who at the time of the trial was Chief of the Office of Financial Affairs for the Department of Local Government Affairs for the State of Illinois and on leave as a professor of economics at Southern Illinois University at Carbondale, testified for plaintiffs. He stated that from an accepted table giving statistics of females in this state, a 17-year-old girl would have a life expectancy of 53.98 years and, assuming that she went into the work force at age 20, would have a work-life expectancy of 41.3 years. A similar table showed that a male 19 years of age would have a work-life expectancy of 41.8 years. Dr. Cohen stated that an average salary for males without regard to education would be $9851 per year. The following then took place:

"Q. And what is the total income for this average period—for the 41.8 year period?

A. Four hundred and—

4

MR. GRAHAM: Objection, your honor. It has no relevancy. Simple multiplication of the average times the number of years won't get us anywhere at all.

MR. GILLESPIE: Well, I am trying to explain the exhibit, your honor, I don't know whether—whether it's relevant or not. I think it's relevant so far as going onto the next exhibits.

THE COURT: All right. I'll overrule the objection."

The witness then answered that the total in question would be the sum of $411,802. Without further objection he testified that in a similar manner the average earnings for a female with four years of high school is $4215 a year and that her total life-work expectancy would yield the sum of $174,087. He further stated that the average earnings for a male with four years of college would be $10,267 yielding a total sum of $429,140 over his estimated work-life.

Dr. Cohen then testified that statistics collected over many years indicate a trend of continually increasing wages and salaries for individuals and that a reasonable projection of earnings into the future should take this into consideration. He also recognized that the present value of a given amount of earnings to be received in the future has a lesser value today because money, when invested, can earn interest or profit, making the right to a given sum of money more valuable the sooner received. He indicated that both of these factors should be taken into consideration in making a true projection of present value of future anticipated wages or salaries and that these factors cancelled each other out because the going annual interest rate was about the same percentage as the average yearly increase in the salary or wage rate.

On cross-examination, Dr. Cohen stated that the average person had about 5 percent of his income available for savings. The average expenditure of 20 percent of the income for taxes was an item that limited the average savings to 5 percent. He testified that persons the ages of John Massich, James Baird and Ruth Baird had life expectancies of about 20, 27 and 32 years, respectively. He then made a computation of 5 percent of an annual salary of $10,267 (the figure he had given on direct examination as the average annual salary of a male college graduate) times the average life expectancy of a person the age of John E. Massich and obtained a figure of $10,302.93. A similar computation was made by multiplying by 5 percent the product of the average annual income of a woman of the average life expectancy of Ruth Baird and a figure of $6533.25 was obtained. On redirect examination, he testified that a person paying for nursing home care for a parent would ordinarily not make that payment from the 5 percent of the income available, on average, from savings.

At the conclusion of Dr. Cohen's testimony, defendant's counsel moved to strike the witness' testimony in the following words:

> "Your honor, we would move to strike the testimony of this gentleman, inasmuch as the evidence of gross personal income is not relevant nor material to figuring out the net income available to be able to be expended for this decedent to his parents. The method that he used is not an acceptable method, in terms of actuarial science. Citing as not material this item—that is the annual expected lifetime earnings—is not material to the issue here—the pecuniary loss to the parents."

The motion to strike parallels the objection made during the direct examination of the witness and challenges the relevancy of projected estimated lifetime earnings of decedents to the income that would be available to expend on behalf of a parent. Neither the question of Dr. Cohen's expertise, his consideration of inflation in projecting earnings, nor any other aspect of his testimony is preserved for review.

Two cases deal most directly with the relevancy of computations of projected estimated future earnings of a decedent as used here. The opinions in both cases are critical of the type of presentation made here but in both cases any error was offset by mitigating circumstances. In *Allendorf v. Elgin, Joliet and Eastern Ry. Co.,* 8 Ill.2d 164, 133 N.E.2d 288, an action was brought under the Federal Employees Liability Act (45 U.S.C.A. §§ 51-59) to recover for a death. There, as here, the measure of damages was pecuniary loss to the next of kin. In testifying for the plaintiff, an actuary computed the present value of the net monthly income of the decedent, after deductions for taxes and personal expenses, projected over his actuarially-expected work-life. Separate computations were made assuming interest rates of 2½ percent and 3½ percent. The opinion stated:

> "To allow an actuary to testify to figures, which the jury might adopt as real, carries with it the danger that the jury will accept them not only as the actuary's explanation of his process of computation, but also as proof of contribution and life and work expectancy. Anticipating this very danger, the defendant caused the jury to be instructed that the actuary's testimony was not to be so interpreted. And on cross-examination of Miss Young, it was thoroughly developed that she did not mean to be saying what amount in dollars the plaintiffs would have received had decedent lived, nor for what period of time they would have received the same.
>
> We are of the opinion that the proper method of assisting a jury in making damage calculations is for the actuary to use

neutral figures. In the usual situation where hypothetical inquiries are permissible, it is necessary that the expert assume a factual situation as reflected in the proof in order to insure that his testimony bears upon the issue to be determined. The actuary, however, is called upon only to describe to the jury a mathematical process that will simplify the jury's task of determining the present value of the contribution that plaintiffs would have received had decedent not been killed. To accomplish that purpose it is not necessary that he use figures that correspond with those appearing in evidence, and when he does so there is a danger that the jury may be misled. Once the formula is before the jury, its application to the facts of the case is a matter for argument of counsel." 8 Ill. 2d 164, 177-78, 133 N.E.2d 288, 294-95.

The court ruled that the error in the method of presenting the actuary's testimony was counterbalanced because the jury was instructed that the evidence was not to be interpreted as a statement of what the earnings would actually be, because the decedent appeared to be unusually thrifty and would likely have worked past the estimated age of 65; because no consideration was given in the estimate for the intangible items of recovery concerning the training deceased would have given the children and the services he would perform at home; and because the figures were unnecessarily favorable to the defendant because income taxes had improperly been deducted from gross income in estimating the income available for the family. The judgment for the plaintiff was affirmed.

In *Wawryszyn v. Illinois Central R.R. Co.*, 10 Ill.App.2d 394, 407, 135 N.E.2d 154, 160, also a death case under the Federal Employees Liability Act, the actuary witness computed an estimated present value of the decedent's work-life earnings less the income taxes he would be estimated to have paid. The court said that the figure given was not "relevant" to the measure of damages because no deductions were made for estimated personal expenses. Since, under the evidence, the income taxes improperly considered, and the personal expenses, improperly not considered, were in substantially the same amount, the court held that no reversible error occurred. No mention was made of the failure to use neutral figures.

■■ In the case under consideration, Dr. Cohen did not use "neutral figures." The work-life expectancy of both of the minors was longer than the life expectancies of any of their respective parents and in his projection testified to on direct examination, he did not make any deductions for living expenses for decedents. On cross-examination, however, defendant was permitted to have him testify to projections that *were limited* to the life expectancy of the parents and that *did consider* deductions for personal living expenses. These projections were unduly favorable to de-

fendants because they considered only "savings" of decedents as available for gifts to or support of parents and because estimated Federal income taxes were deducted from gross income in considering the money available as savings. The overruling of the relevancy objection and the denial of the motion to strike Dr. Cohen's testimony were not, of themselves, reversible error.

Defendant contends that the court erred in giving plaintiffs' instructions 5, 6 and 11 over its objection and in refusing defendant's instructions 4, 6, 7 and 8. Plaintiffs' instructions 5 and 6 were IPI 2d (Civil) No. 31.01 (1971), which is designated "Measure of Damages—Wrongful Death—Young Child—Lineal Next of Kin Surviving." Defendant contends that the use of the word "pecuniary" and the phrase "substantial pecuniary loss" is so vague as to deny it of fundamental due process. We find the words to be clear and to require no further definition. The cases concerning vague penal statutes, cited by defendant, are not analogous. Defendant's instructions 6 and 7 are IPI 2d (Civil) No. 31.04 (1971) modified. The IPI format for that instruction indicates that it is to be given when damages are sought for the death of a parent. Although defendant complains that IPI 31.01 does not list all elements of pecuniary loss, no elements of pecuniary loss are listed in IPI 31.04 which are not also listed in IPI 31.01. IPI 31.04 sets forth factors concerning the decedent which should be borne in mind in determining pecuniary loss. One such factor is the instruction and training given the children by the parent. In defendant's tendered instructions 6 and 7, that factor was stated as the instruction given the parent by the child. It is not a proper consideration in this case. Defendant's instruction 4 was not an IPI instruction and was redundant to plaintiffs' instructions 5 and 6.

Plaintiffs' instruction 11 was IPI 2d (Civil) No. 34.05 (1971) "Mortality Tables as Evidence of Damages—Death Case." Defendant's instruction 8 was IPI 2d (Civil) No. 34.03 (1971)—"Death Case—Discount of Future Damages." Defendant contends that "the issue of discount gets lost" in IPI 34.05. Both instructions have the same statement of the requirement that future earnings must be discounted to present value. Plaintiffs introduced mortality tables into evidence. IPI 34.05 tells the jury of the proper use of this evidence. Plaintiffs' instruction was the appropriate one to give.

■■ Supreme Court Rule 239(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 239(a)) provides that IPI instructions are to be used unless they do not state the law. Plaintiffs' instruction in question stated the law. Defendant's were redundant or inaccurate. No error was committed in the giving or refusal of instructions.

In closing argument, counsel for plaintiffs stated that before the testi-

mony of the defendant's witness, Mullen, an actuary, plaintiffs were only asking for $300,000 for each death, but since that witness had insulted the intelligence of the jury, "the price should double." The objection to that argument should have been sustained. The court did sustain an objection to the last portion of plaintiffs' closing argument where counsel asked for $500,000 for each administrator because "that's what life was worth to the parents." No other portions of closing argument were objected to by defendant and it made no motion for a mistrial. No reversible error occurred during closing argument. See *Goldstein v. Hertz Corp.*, 16 Ill.App.3d 89, 305 N.E.2d 617.

The parties agree that the plaintiffs are entitled to recover only for pecuniary damages. Each of decedents left at least one lineal next of kin, in this case one or more parents. Lineal next of kin are presumed to suffer substantial pecuniary damage. (*Hall v. Gillins*, 13 Ill.2d 26, 147 N.E.2d 352.) This rule recognizes the difficulty in proving actual damages when a child whose earning power has not yet been shown is killed. The presumption may be rebutted. Evidence offered of actual damage is in support of the presumption. See *Flynn v. Vancil*, 41 Ill.2d 236, 242 N.E. 2d 237.

No case has been brought to our attention where a court of review in this State, since the removal of the limitation on recovery under section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1967, ch. 70, par. 2), has ruled an award for wrongful death to the parents of a deceased to be excessive. In *Mattyasovszky v. West Towns Bus Co.*, 21 Ill.App.3d 46, 313 N.E.2d 496, *aff'd*, 61 Ill.2d 31, 330 N.E.2d 509, a judgment was entered on a verdict for the administrator in the sum of $74,000. There the decedent was a 12-year-old boy, the oldest of four children, who did all of the outside maintenance work for the family. In addition to going to school, he worked for a newspaper, and mowed lawns, paying some of his own expenses and contributed to the family. He planned to go to college. The court affirmed stating:

> "Fixing the amount of damages is a function of the trier of fact and that determination will not be disturbed unless obviously the result of passion or prejudice. (*Maca v. Rock Island-Moline City Lines, Inc.*, 47 Ill.App.2d 31, 37, (1964).) Based on the evidence presented, we cannot say that the jury's award was obviously based upon passion or prejudice." 21 Ill.App.3d 46, 56, 313 N.E.2d 496, 503.

The jury verdicts in this case are for substantial sums of money. The fact does not warrant this court abrogating the general rule that the determination of the amount of damages is a function of the jury and is not to be disturbed unless obviously the result of passion and prejudice.

There is no indication whatsoever in this record that the substantial award was based upon passion or prejudice. Indeed, the record clearly establishes that the decedents were extraordinary people and that their potential, based upon their past accomplishments, was beyond the ordinary. The judgments entered upon the verdicts of the jury are affirmed.

Judgments affirmed.

SIMKINS, P. J., concurs.

Mr. JUSTICE GREEN, dissenting:

I agree with the majority that no reversible error occurred during the trial. I also agree that the determination of damages is generally a function of the jury and should not be overturned unless obviously the result of passion and prejudice. The jury's discretion is not without limitation however. In *Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 453, 158 N.E.2d 63, 69, in ruling that a personal injury award was not excessive the court stated that the reviewing court had an "obligation to carefully scrutinize the record to determine whether the amount of the verdict is *so large* as to indicate passion and prejudice." (Emphasis added.) Under the circumstances of the present case, the amounts of the awards are so large as to indicate that the jury was influenced by passion and prejudice.

If the sum of $100,000 from each of the awards of $188,000 were available for investment at a return of 5% per annum, an income of $5,000 per year would be available for the benefit of each family without invading the principal. If any of the next of kin had major illness or other catastrophy, expenses so incurred could be defrayed from the principal. I can see no likelihood that either decedent here would have bestowed such pecuniary benfits upon their parents had they lived. The award for the next of kin of Debra Lynn Baird is larger than her projected lifetime earnings, as estimated by Dr. Cohen, to be $174,087. I can reach no conclusion other than that the size of these awards arose from the passion of sympathy for the next of kin in their tragic bereavement and the prejudice against the defendant for its responsibility in causing it.

These awards are the largest for the wrongful death of an unmarried person leaving no descendants ever to come before the courts of review in this State. They are more than 2½ times as large as that ruled not to be excessive for the death of a 12-year-old boy in *Mattyasovszky v. West Towns Bus Co.*, 21 Ill.App.3d 46, 313 N.E.2d 496. That decedent was also a person of high character with outstanding potential earning capacity and a demonstrated devotion to his family.

Courts are reluctant to undertake the speculative task of setting a figure beyond which an award is excessive. It is a responsibility which

must be assumed at some time, however. Otherwise, as awards get higher, the proponents of each will justify its reasonableness on the precedent of the approval of the highest previous award.

In this case, even considering the determination made by the jury, its approval by the trial judge and the high capabilities and characters of the decedents, I consider verdicts in the sum of $150,000 each to be the highest that could be justified here. Accordingly, I would condition my affirmance of each judgment upon the filing in this court, by the plaintiff as to that judgment, of a remittur to the sum of $150,000. I would set aside any judgment to which no remittur was filed and remand that case to the trial court for a new trial as to damages only.