(No. 48037.-

JAMES BAIRD, Adm'r, *et al.*, Appellees, v. CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed May 14, 1976.—Rehearing denied June 28, 1976.*

464

CREBS, J., took no part.
SCHAEFER, J., dissenting.

Graham & Graham, of Springfield (R. E. Skov, of Chicago, of counsel), for appellant.

Gillespie, Burke & Gillespie, of Springfield (George B. Gillespie, of counsel), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

The circuit court of Sangamon County entered judgments upon jury verdicts in the amount of $100,000 each in favor of plaintiffs, James Baird, administrator of the estate of Debra Lynn Baird, deceased, and John E. Massich, administrator of the estate of Michael E. Massich, deceased, and against the defendant, Chicago, Burlington and Quincy Railroad Company, now Burlington Northern. The decedents were killed as the result of a collision between a motorcycle operated by Michael, with Debra as his passenger, and defendant's train. Defendant appealed and the appellate court reversed and remanded the causes

for a new trial on damages only. (11 Ill. App. 3d 264.) Upon retrial the jury returned verdicts in favor of each plaintiff in the amount of $188,000. The circuit court entered judgment on the verdicts, defendant appealed, the appellate court affirmed (32 Ill. App. 3d 1), and we allowed defendant's petition for leave to appeal.

The facts are adequately stated in the appellate court opinions and need not be repeated here. The record shows that the decedents, Debra Lynn Baird, age 17, and Michael E. Massich, age 19, were healthy, well adjusted, intelligent young people who attended church regularly and who enjoyed excellent relationships with their parents. Debra Lynn was a high school junior who intended to become a special education teacher. Michael had been a straight "A" student and valedictorian of his high school class. Prior to his death he had completed a year in the chemistry and engineering curriculum at the University of Illinois and had worked and partially supported himself. Debra was survived by her parents, both of whom were 41 years of age at the time of her death. Michael left surviving his father, who at the time of his death was 49 years of age.

Defendant contends that the testimony of an economist called by plaintiffs was erroneously admitted into evidence for the reason that "The Rule of Law in Illinois requiring discount of future loss to present value was totally ignored in [his] testimony" and "because it projected income over the entire lifetime of the decedents rather than over the lesser life expectancy of the next of kin" and "because it failed to reduce gross annual salary projections by the amounts decedents would have to spend before they were in a position to contribute to their next of kin." Defendant contends, too, that instructions tendered by plaintiffs were erroneously given and that instructions tendered by defendant were erroneously refused. These errors, defendant contends, resulted in verdicts so excessive as to require reversal.

The witness of whose testimony defendant complains

was Dr. Leo Cohen, who was on leave from his position as professor of economics and director of the Center for Urban and Environmental Research at Southern Illinois University at Edwardsville. At the time of trial he was serving as chief of the office of financial affairs for the Department of Local Government Affairs for the State of Illinois.

Dr. Cohen, utilizing life expectancy and work life expectancy tables, and statistics described as "United States Census of Population Detail Characteristics 1970," expressed the opinion that a male of the age and educational background of the decedent, Michael E. Massich, had a work life expectancy of 41.8 years and could expect an average annual salary of $9,851 per year with lifetime earnings of $411,802. Concerning a female of Debra Lynn's age and educational background, and utilizing 1969 income levels, he projected a work life expectancy of 41.3 years, at an average of $3,995 per year, for a lifetime total of $165,012. The average earnings for a male entering the labor force at age 21 with 1 to 3 years of college would be $10,267 per year with a lifetime total of $429,140. A female high school graduate entering the labor force at age 20 could expect earnings totaling $174,087.

In response to a question by plaintiff's counsel Dr. Cohen said "*** we're not going to wait, as the circumstances clearly reflect, for someone to earn these dollars each year for the next forty years. We are going to try to have to ascertain what those earnings would have been, then discount them, or bring them back to the present and say what they would be worth now, if there was going to be a cash or a lump sum payment.

"My research clearly indicates that invariably, year in and year out, wages have been growing at a faster rate than whatever the discount or interest rates have been. There has consistently been about a two per cent differential. What I'm really saying is this. That if wages have been

growing by about five per cent, interest rates have been about three per cent. If wages have been growing at about seven per cent, then discount rates have typically been about five per cent.

"So, I took what I believe is a very conservative — uh — I made a very conservative assumption, and assumed that whatever wages were going to be growing at, whatever that rate was, it was going to be completely offset by the interest rate. In other words, trying to make it as simple as possible, what I'm saying is that I'm assuming that the interest and discount rate and growth rate and wages or income are identical."

Asked whether there were any "personal consumption figures" for "a person who enters the labor force," Dr. Cohen replied, "Not in terms of what you're getting at. We have what we call average budget figures that reflect standard, modest, high-level budgets in terms of average amounts spent, in terms of ideal situations, but not in terms of bringing the population in in any reasonable way to show what the average person does. There are only reflections of what would be needed to maintain certain levels in terms of one standard of living."

On cross-examination Dr. Cohen was interrogated extensively concerning, and gave examples of, his method of computation. He was also asked about the life expectancies of the surviving parents of the decedents, the income tax applicable to the decedents' projected earnings, the proportion of their projected incomes which would be disbursed for personal consumption, and the proportion available for savings. The motif of the cross-examination was that 5% or less of the decedents' earnings would be available for savings and that the pecuniary loss suffered by their surviving parents was the present value, not of the projected earnings of the decedents, but of such sums as the parents could expect to receive from the decedents' savings, computed on the basis of the life expectancy of the parents, rather than the decedents.

Edward Mullen, a professional actuary with 40 years of experience in various positions in government and private industry testified for defendant. At the time of trial he was vice-president of A.S. Hanson and Company, a firm which provided actuarial service for approximately 50 clients in the insurance industry. Utilizing census information concerning marital status of the population, and tables published in the 1972 Statistical Abstract of the United States, he projected income and "personal consumption expenditures" for both decedents. He testified concerning the present value of the decedent's projected earnings and explained exhibits which he had prepared. These exhibits purported to show, respectively, the present values of $1 per month and $100 per month, payable at the end of each month, at interest rates of 4%, 5% and 6% "as long as Debra Baird is alive and single and either James or Ruth Baird is alive" and "as long as Michael Massich is alive and single and John Massich is also alive." As shown by these exhibits, dependent upon the discount rate to be applied, the present value of the pecuniary loss suffered by reason of their deaths ranged in the case of Debra Lynn from $3,177.60 to $3,344.40 and in Michael's case from $4.684.80 to $4.982.40.

Mr. Mullen was critical of Dr. Cohen's testimony on the ground that Dr. Cohen in his computations had failed to limit the "income stream" to the substantially shorter life expectancies of the surviving parents of the decedents. He was also critical of Dr. Cohen's failure to indicate that the monies available to benefit the decedents' parents would be available from only 3.9% of their gross earnings, which Mr. Mullen testified is, on the average, available for savings. He also disagreed with Dr. Cohen's assumption that inflation has and will continue to outstrip interest rates.

Citing *Avance v. Thompson,* 387 Ill. 77, defendant contends that the circuit court erroneously denied its motion to strike Dr. Cohen's testimony for the reason that

his projections consisted merely of the simple multiplication of expected average earnings by the expected work life expectancy of the decedents. The record does not support this contention. Dr. Cohen's testimony shows clearly that he gave consideration to what he considered an appropriate discount rate and reduced the projected earnings to their present value.

Relying upon *Allendorf v. Elgin, Joliet and Eastern Ry. Co.* 8 Ill.2d 164, defendant contends that the exhibits prepared by Dr. Cohen should have been excluded from evidence because they failed to reflect deductions for personal consumption from projected gross earnings. In *Allendorf* we noted that in computing the damages suffered by the decedent's widow and children, it was proper to deduct proven personal expenditures from the decedent's gross earnings. It does not follow, however, that such deduction was a prerequisite to the expression of an expert opinion which did not relate to the question of what portion of the decedent's earnings would be available for savings and expenditures for the benefit of their surviving parents. Furthermore, the record shows that Dr. Cohen was examined at great length concerning such deductions and that the jury was told by Mr. Mullen, and repetitively by defense counsel, that Dr. Cohen's projections had failed to take into account expenditures for the necessary expenses of the decedents.

The contentions made by defendant concerning the instructions given and refused are essentially the same as those made with respect to Dr. Cohen's testimony. It argues that the instructions failed to properly take into account the expenditures which would be required for the necessary expenses of the decedents and the substantially reduced sums which would be available for the pecuniary benefit of the surviving parents, and that the instructions did not require that the pecuniary loss must be determined on the basis of the life expectancy of the surviving parents and not the longer expectancies of the decedents.

The record shows that the court gave instructions for each plaintiff in the form of Illinois Pattern Jury Instructions, Civil (hereafter IPI) No. 31.03 and one instruction in the form of IPI 34.05 which stated the ages and life expectancies of both decedents and their surviving parents. Defendant contends that the circuit court erred in giving an instruction in the form of IPI 34.05 and that instead it should have given two instructions tendered by defendant, one concerning each decedent, which purported to modify IPI 34.04, for use in a wrongful death case. The argument in the conference on instructions and, in essence, on appeal was that "Basically *** the issue of discount gets lost in the issue of mortality tables." Defendant argues that the concept of discounting to present value "gets lost" in IPI 34.05 and that the terms "pecuniary loss" and "substantial pecuniary loss" are so vaguely defined in IPI 31.01 and 31.03 as to render them unconstitutionally vague. Their use in these instructions, defendant argues, deprived it of fundamental due process.

We are of the opinion that as used in the instructions contained in IPI, the terms of which defendant is critical are clearly understandable by men of common intelligence (see *People ex rel. Armstrong v. Huggins,* 407 Ill. 157) and are not unconstitutionally vague. The circuit court correctly gave the instructions tendered by plaintiffs in the form of those contained in IPI and rejected those tendered by defendant. See Rule 239.

We consider next the contention that the verdicts are so excessive as to require reversal. The rule has long been that "In cases arising under the Wrongful Death Act, if the next of kin are lineal kinsmen of the deceased, a presumption of pecuniary loss obtains from the relationship, alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss." (*Howlett v. Doglio,* 402 Ill. 311, 316.) In the case of the wrongful death of a minor, leaving surviving parents, the role of the presumption and other relevant factors was

stated in *Flynn v. Vancil,* 41 Ill.2d 236, 238: "The relevant portions of the Wrongful Death Act (Ill. Rev. Stat. 1965, chap. 70, par. 2) provide, in substance, that the jury may give damages for pecuniary injuries from the wrongful death to the widow and next of kin of the decedent. In cases involving the wrongful death of a child, the court, at an early date, recognized the difficulties of proving 'pecuniary loss,' since the child's habits of industry and potential work could not be determined; consequently, the rule was promulgated that where deceased is a minor and leaves a father entitled to his services the law presumes there has been a pecuniary loss for which compensation under the statute may be given. (*City of Chicago v. Scholten,* 75 Ill. 468.) Such damages included the reasonable expectation of benefits from the continuation of life, (*City of Chicago v. Keefe,* 114 Ill. 222, 230,) and the presumption has been invoked by the Illinois courts consistently through the years. *Knierim v. Izzo,* 22 Ill.2d 73, 78; *Hall v. Gillins,* 13 Ill.2d 26, 31; *Jung v. Buelens,* 77 Ill. App. 2d 391, 397; *Maca v. Rock Island-Moline City Lines, Inc.,* 47 Ill. App. 2d 31, 36-37; *Ferraro v. Augustine,* 45 Ill. App. 2d 295.

"In no case, however, has the presumption been held conclusive. Quite the contrary, courts invoking the presumption have buttressed it with a recital of supporting evidence relating to the good health, industrious habits and potential longevity of the deceased minor. *Wallace v. City of Rock Island,* [323] Ill. App. 639; 1964 U. Ill. L. Forum, 683, 686." That the question of adequacy and excessiveness of verdicts is not without difficulty is demonstrated by the conflicting and irreconcilable results shown in the cases collected in the annotation styled "Excessiveness and Adequacy of Damages for Personal Injuries Resulting in Death of Minor." 49 A.L.R.3d 934 (1973).

This court has held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury was properly instructed on the measure of

damages, a reviewing court should not substitute its judgment for that of the jury as to the sum to be awarded. The jury was correctly instructed, and the record contains much evidence from which it could have concluded that by reason of the death of these decedents their surviving parents suffered great pecuniary loss. The jury had the benefit of conflicting expert opinions, and it may be assumed that they evaluated the testimony, as instructed by IPI 1.04, "in the light of [their] own observation and experience in the affairs of life." We find apposite here, on this record, the concluding comments of the opinion in *Lau v. West Towns Bus Co.,* 16 Ill.2d 442, that "We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice.

"We therefore conclude that the verdict and judgment below are correct and the judgment is affirmed." 16 Ill.2d 442, 453.

*Judgment affirmed.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.

MR. JUSTICE SCHAEFER, dissenting:

I agree with Mr. Justice Green of the appellate court that the damages awarded in this case were excessive, and I dissent for the reasons stated in his dissenting opinion in that court. See 32 Ill. App. 3d 1, 9.