**Beatrice ROBERSON and Maggie Derringer, Plaintiffs,**

v.

**Jim WOOD, Four Fountains, Inc., and Arthur Quern, in his official capacity as Director of Illinois Department of Public Aid, Defendants.**

Civ. No. 78–4321.

United States District Court, S. D. Illinois.

Nov. 12, 1980.

Margaret Stapleton, Land of Lincoln Legal Assistance Foundation, Samuel Wilds, Senior Citizens Legal Serv., East St. Louis, Ill., Jay Rosen, Neighborhood Legal Asst. Program, Charleston, S. C., for plaintiffs.

K. Peter Kemezys, Springfield, Ill., Barbara Fritsche, Asst. Atty. Gen., Springfield, Ill., John M. Ferguson, Belleville, Ill., for defendants.

## ORDER

FOREMAN, Chief Judge:

Before the Court is a litigation in which nursing home patients seek to assert their rights under federal law and regulations, the Constitution and state law. Plaintiffs Beatrice Roberson and Maggie Derringer were elderly residents of the Skilled Nursing Facility (SNF) at Four Fountains Convalescent Center (Four Fountains), a division of Four Fountains, Inc. Sometime in August 1978, Jim Wood, the Administrator of Four Fountains decided to terminate the SNF there. He sent letters to the families of Roberson and Derringer explaining his intent to terminate the provider agreement with the Illinois Department of Public Aid (IDPA) supporting the SNF and informing them of the necessity of transferring the residents out by August 31, 1978. The residents, Wood stated, could go to a new nursing care facility of their choice. The reason given for the termination was the need to free up scarce beds for other patients. Similar letters were allegedly sent to twenty other residents or their families.

On August 30, 1978, plaintiffs Roberson and Derringer filed a complaint on behalf of a class of residents who were to be transferred from Four Fountains against Jim Wood, Four Fountains and Arthur Quern, the Director of the IDPA. Plaintiffs argued that medicaid patients could be transferred only for reasons specified at 42 C.F.R. § 405.1121(k)(4), and since they were to be transferred for other reasons, this violated the federal regulations; that as third party beneficiaries of the contract between the Department of Health and Human Services and IDPA, they could complain that Four Fountains was not in compliance with the contract; that 42 U.S.C. § 1396a(a)(3) and 45 C.F.R. § 205.10 required notice and a hearing before transfer since the transfer was "action affecting that recipient's claim to Medicaid benefits"; that failure to give notice and hearing before transfer in any case violated due process guaranteed by the Fourteenth Amendment and 42 U.S.C. § 1983; and that the Department was supposed to have written policies under 42 C.F.R. § 405.1121(1)(1) affecting termination and transfer and it had none. Plaintiffs requested relief including (1) certification of the class; (2) a declaration under 28 U.S.C. § 2201 that defendants were in violation of 42 U.S.C. § 1396a(a)(19) and 42 C.F.R. § 405.1121(k)(4) and an order enjoining them from making the transfers; (3) a declaration that Quern and Four Fountains had breached the contract between them; (4) a declaration that Quern had violated 45 C.F.R. § 205.10, 42 U.S.C. §§ 1396a(a)(3) and 1983; (5) a declaration that defendants violated 42 U.S.C. § 1396a(a)(19) and 42 C.F.R. § 405.1121(1)(1) by failing to give pre–transfer aid; and (6) damages for each named plaintiff of $15,000.

A motion for a temporary restraining order was filed on the same day and the TRO issued the next day on August 31, 1978, preventing transfer of the patients. On September 8, 1978, the TRO lost force and effect, but the parties reached an agreement on patient transfer. All defendants filed motions to dismiss based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). This Court denied those motions in an order of January 18, 1979, No. CV 78–4321. In that order, the Court decided that the statute and regulations gave plaintiffs a legitimate property interest in continued residency at the facility of their choice. The Court also decided that the breach of contract count was a proper object of pendent jurisdiction and that the Medicaid Act granted plaintiffs an implied federal claim cognizable under 28 U.S.C. § 1331.

Subsequently, on February 14, 1979, defendants Wood and Four Fountains filed a new Motion to Dismiss, alleging that since Four Fountains was now going to allow the natural termination of its provider agreement on February 28, 1979, and thereafter withdraw completely from the Medicaid program, there would be no jurisdiction over them. It alleged that it had never received federal funds in the construction of Four Fountains, and thus, was not bound

to the federal government under any law such as the Hill–Burton Act, U.S.C. 42 U.S.C. § 291, *et seq.* Plaintiffs responded on March 23, 1979, arguing that the lawfulness of defendant's actions in the first place were still viable issues and that new IDPA rules passed pursuant to the Residents Bill of Rights, 42 C.F.R. § 405.1211(1)(1), imposed new obligations on Four Fountains.

In the meantime, the parties exchanged motions concerning a preliminary injunction, class certification and amendment of complaint and other matters. On May 15, 1979, the Court entered on order denying class certification, denying Wood's and Four Fountain's Motion to Dismiss, and denying plaintiffs' Motion to Proceed Without Revealing the Plaintiff's True Name. The parties agreed to allow amendment of plaintiffs' complaint and in course the defendants answered the amended and supplemental complaint. On September 21, 1979, Wood and Four Fountains filed a cross–claim against defendant Quern as Director of the IDPA in two counts. Count I alleged that the IDPA was in violation of 42 U.S.C. § 1396a(a)(13)(E) by not reimbursing the provider homes in a sufficient amount for the cost of SNF care. Count II cited the new rules put into effect by the IDPA on February 13, 1979, which provide as follows:

RULE 4.1405 PROVIDER VOLUNTARY WITHDRAWAL

EMERGENCY

Recipients for whom the Department makes payment under the medicaid program to group care facilities are protected by the "Patients' Bill of Rights" described in 42 Code of Federal Regulation Section 405.1121(k) and Section 442.311(c). No such recipient may be required by the facility under such regulation to leave the facility for reasons other than those enumerated in that regulation. If such a group care facility informs the Department in writing that it intends to stop participating in the Department Medicaid program, the Department shall not authorize additional recipients to be placed in the facility. The Department shall continue to pay for the care of recipients who continue to reside in such a facility or provided that payment is not terminated by operation of Rules 4.1401, 4.1402, or 4.1403.

RULE 4.1406 CONTINUATION OF PROVIDER AGREEMENT

EMERGENCY

If the Department continues to pay for a recipient in a group care facility with which the Department no longer has a currently effective provider agreement, the terms of the provider agreement previously in force shall be deemed to continue in force for the purpose of governing the relationship between the provider and the Department in respect to the recipient or recipients remaining in the facility for as long as the patient remains in that facility as a recipient.

Four Fountains claimed that it informed the IDPA of its intent on January 26, 1979, not to renew its provider agreement when it expired on February 28, 1979, and that it was not going to be bound under these new rules to continue to care for the patients since these provisions would illegally modify their previous contract. Ancillary jurisdiction was alleged to lay over this claim and to lie directly under 28 U.S.C. § 1331.

Quern filed a Motion to Dismiss the cross–claim and the Court dismissed Count I in an order of March 19, 1980. Count II, however, survived the Motion to Dismiss.

Subsequently, papers were filed including the motions now before the Court: (1) Four Fountains' Motion to Dismiss four through nine of plaintiffs' claims for relief; (2) Motion for Appointment and Substitution of Special Administrator; (3) Motion to Dismiss or for Summary Judgment by defendant IDPA Director Miller; (4) Motion to Deny Substitution and Dismiss Complaint of Four Fountains; and (5) Motion for Judgment on the Pleadings of Four Fountains.

On April 6, 1979, a suggestion of death was filed as to plaintiffs Roberson and Derringer and on July 6, 1979, a Motion for Appointment and Substitution of Special

Administrator was filed on their behalf. On May 9, 1980, a suggestion of death was filed as to named plaintiff Martin Hanks and on July 1, 1980, a Motion for Appointment and Substitution of Special Administrator was filed by one Lara Hardesty on his behalf. At this time there is no named living plaintiff in the lawsuit.

## MOTION TO DISMISS CLAIMS FOUR THROUGH NINE OF PLAINTIFFS' COMPLAINT

Claims four through nine of plaintiffs' complaint, as set forth in the prayer for relief, paragraphs (c), (d), (e), (f), (g), (h) and (i), requested declaratory relief only. Defendant Four Fountains moved to dismiss claims four through nine on April 7, 1980, asserting that declaratory claims are purely personal and that since all plaintiffs are now deceased, those claims have abated.

Federal Rule of Civil Procedure 25(a) provides that "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." Fed.R.Civ.P. 25(a). Rule 25(a) is strictly procedural. It does not purport to define which actions shall survive the death of a party.

> Whether the death of a party extinguishes a claim for or against him is not a question of procedure. It is a question of substance on which the state law ordinarily governs. In a federal question case, federal law and federal decisions, rather than state law, determine whether the action survives the death of a party, but some cases have held that if federal law is silent it may be appropriate to look to state law.

[footnotes omitted] 7A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1952, at 642 (1972); 3B J. Moore, *Moore's Federal Practice*, p. 25.04 (2d Ed. 1980).

Plaintiffs have not cited, nor is this Court aware of any federal statute which provides for survival of a right of action in cases under 28 U.S.C. § 1331 or 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). "In the absence of Congressional provision for the survival of such cause of action, [the Court] must resort to the common law developed in federal courts." *Lauderdale v. Smith*, 186 F.Supp. 958, 959 (E.D.Ark.); *Barnes Coal Corp. v. Retail Coal Merchants Ass'n.*, 128 F.2d 645 (4th Cir. 1942).

No federal case relying on federal common law is dispositive of this matter. Nor is a federal case allowing reference to state law on point. In *Pritchard v. Smith*, 289 F.2d 153 (8th Cir. 1961), it was held that 42 U.S.C. § 1988 authorizes reference to state law not inconsistent with the laws of the United States in determining civil rights actions under 42 U.S.C. § 1983, and that this allowed the court to turn to the state law on survival. However, the action in *Pritchard* was one for damages only under § 1983 in which the defendant died survived by an estate. In the instant case, defendants do not in this motion contest that the damage claims survive. They seek only to dismiss the claims for declaratory relief. Moreover, the plaintiffs, not defendants, have died here and they are not survived by an estate.

■ In a situation such as the one presented here, this Court holds that the declaratory relief sought in plaintiffs' complaint does not survive the death of the plaintiffs and defendants' Motion to Dismiss claims four through nine is thereby GRANTED.

As a practical matter, plaintiffs' successors have no interest in obtaining injunctive relief against defendants. No benefit will accrue to successors or the estate of plaintiffs if defendants are compelled by the Court to run the nursing home in a particular way. The successors' interest is evident in a situation where plaintiffs had requested damages that would have become part of the estate. The benefits of declaratory relief could never pass at death here unless the relief requested involved the payment of money, such as back pay.

The absence of a federal case on point allows reference to state law in this action. *Pritchard v. Smith*, 289 F.2d 153 (8th Cir. 1961). In so doing, the Court finds that the result it has reached is confirmed by Illinois

law. Under Illinois law, the test of survivability is whether the claim is assignable. *Hogan v. Braudon*, 40 Ill.App.3d 352, 352 N.E.2d 303 (2d Dist. 1966); *Olson v. Scully*, 296 Ill. 418, 129 N.E. 841 (1921); *see, Ill. Rev.Stat.*, ch. 110, § 54 (1979). The rights sought to be vindicated in claims four through nine are purely personal. It is difficult to conceive of a situation in which they could be assigned. Moreover, apparently true to the proposition that statutes in derogation of the common law should be strictly construed, Illinois courts have held that if an action is one created by a statute and neither that statute nor another provides for the survival of the action, it abates on the death of a party. *Shapiro v. Chernoff*, 3 Ill.App.3d 396, 279 N.E.2d 454 (1st Dist. 1972); *Baird v. Chicago, B&Q R.R. Co.*, 11 Ill.App.3d 264, 296 N.E.2d 365 (1973), *appeal after remand*, 32 Ill.App.3d 1, 334 N.E.2d 920 (1975), *aff'd*, 63 Ill.2d 463, 349 N.E.2d 413 (1976) (narrowly construing Illinois' wrongful death statute).

Accordingly, the Motion to Dismiss claims four through nine is GRANTED.

## MOTION FOR APPOINTMENT AND SUBSTITUTION OF SPECIAL ADMINISTRATOR

As stated above, attorneys for plaintiffs filed a suggestion of death as to named party plaintiffs Maggie Derringer and Beatrice Roberson on April 6, 1979. A Motion for Appointment and Substitution of Special Administrator was filed on their behalf on July 6, 1979. On May 8, 1980, a suggestion of death was filed as to named plaintiff Martin Hanks[1] and on July 1, 1980, plaintiffs' counsel filed a Motion for Appointment and Substitution of Special Administrator. At this time there are no living plaintiffs.

Plaintiffs' request for substitution is pursuant to Rule 25(a) of the Federal Rules of Civil Procedure. Rule 25(a) reads in pertinent part:

"If, a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party ... Unless the motion for substitution is made no later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party."

Fed.R.Civ.P. 25(a).

In the case at bar, each motion to substitute has been filed by a relative of the deceased plaintiff. However, in each the person seeking substitution is neither an executor nor an administrator of the estate. There is no other legal relationship between the movants and the deceased plaintiffs other than kinship. In such a situation, the motions must be denied. Rule 25(a) clearly contemplates appointment of legal representatives, such as an executor or an administrator. *Mallonee v. Fahey*, 200 F.2d 918 (9th Cir. 1952).

Accordingly, the Motions for Appointment and Substitution of Special Administrator of Roberson, Derringer and Hanks are DENIED.

## MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT FOUR FOUNTAINS

On September 17, 1980, defendants Four Fountains and its administrator, Jim Wood, filed a Motion for Judgment on the Pleadings. The motion sought to dismiss plaintiffs' claims for relief 1 through 3 based on the decision of the United States Supreme Court in *O'Bannon v. Town Court Nursing Center*, —— U.S. ——, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980).

Plaintiffs' first claim for relief relied on the Nursing Home Patients' Bill of Rights, 42 C.F.R. § 405.1121(k)(4). That section provides that a patient admitted to a Medic-

1. Martin Hanks began in this litigation under the pseudonym of John Doe. Subsequently, his identity was revealed when this Court denied a Motion to Proceed Without Revealing Plaintiff's True Name.

aid SNF can be transferred or discharged "only for medical reasons, or for his welfare, or that of other patients, or for non—payment of his stay," and that a patient must be given reasonable notice to insure orderly transfer or discharge. Plaintiffs allege that defendants caused them great pain and suffering when it initiated illegal transfers, that is, for reasons other than those listed at 42 C.F.R. § 405.1121(k)(4). Plaintiffs also allege that defendants have not formulated the rules for patient care and transfer called for in the Nursing Home Patients Bill of Rights. *Apparently*, the claim seeks damage relief.

The second and third claims for relief allege that the letters sent by defendant in December 1978 and January 1979 to the patients were illegal in that there was no justification in the federal regulations for the transfers, and that this illegal act caused great injury. Plaintiffs again alleged that these acts greatly endangered the lives and health of the patients and subjected them to "transfer trauma." These claims also appear to seek damage relief.

Defendant Four Fountains now argues that the decision in the *Town Court* case indicates that federal medicaid regulations cannot serve as a basis for a damage action against the nursing home where neither the enabling statute nor the regulations grant such a right. In this respect, it is urged, the prior order of this Court of January 18, 1979, which held that the federal statute and regulations applicable to Medicaid allow for a private cause of action for their violation, is overruled. The Court agrees with defendant Four Fountains.

In *Town Court*, the Supreme Court held that patients have no interest in receiving benefits at a particular provider facility which entitles them to a hearing before the federal government and the state agency can decertify the facility. The Court stated that "while [the patients] might have a claim against the nursing home for dam-

ages[20] [for failure to meet certification standards], nor would have any claim against the responsible governmental authorities for the deprivation of an interest in life, liberty or property." 100 S.Ct. at 2476. Note 20, referred to in the above quote, stated: "This would, of course, depend on the contract between the patients and the nursing home, if any, and the provisions of the applicable state law." 100 S.Ct. at 2476, n. 20.

The thrust of these passages is clear. If a patient is to be transferred to another facility, but actual benefits to pay for care at some location somewhere are not modified, reduced or terminated then the plaintiff patient must resort to state law and contractual provisions for relief. It is true that *Town Court* did not deal with a situation in which a provider terminates services on its own under a provider agreement which allows for such termination. However, this does not change the result. Federal law and regulations nowhere provide that once a provider takes on patients, it can never withdraw from the program unless it is decertified by the government. Restrictions on the withdrawal of a provider can only possibly lie in the existence of Hill–Burton assurances[2], in the contract between the patients and the provider or in state law. Since the Hill–Burton Act plays no part in this litigation, the answer here must be in contractual agreements or state law.

Pursuing this avenue of inquiry, defendant Four Fountains' motion must be allowed. First, there was no contractual agreement between the plaintiffs and defendants to support an action. Second, the actions of Four Fountains with respect to the contract between Four Fountains and IDPA were entirely legal. The contract provided in paragraph 13 that "the facility may terminate this agreement upon notice to the Department of Public Aid." Such notice was given on January 29, 1979, to IDPA and the patients, that the agreement

---

**2.** *See*, 42 U.S.C. § 291 *et seq.* The Court expresses no opinion on the restrictions the Hill–

Burton puts or can put on a nursing home.

would terminate on March 1, 1979. Four Fountains was within its rights under the contract. Plaintiff argues, however, that a rule passed by IDPA on February 12, 1979, Rule 4.1405, Provider Voluntary Withdrawal, pages 3–4, *supra*, modified the provider agreement and prevented Four Fountains from terminating lawfully. This does not seem to be correct. Four Fountains asserts, and plaintiffs do not deny, that under Illinois law the police power to regulate nursing homes belongs to the Department of Public Health, *Ill.Rev.Stat.*, ch. 111½, § 35.-16 *et seq.* (1977). Since nursing homes did not have to belong to the Medicaid program by statute, the relationship between the IDPA and Four Fountains was contractual. Only the Department of Public Health, and not the IDPA, was given police power to override an existing voluntary contractual relationship. Provisions contained in the Nursing Home Reform Act of March 1, 1980, *Ill.Rev.Stat.*, ch. 111½, § 4151–101 *et seq.*, which do prohibit discharges except for specific reasons, were not in effect at the time Four Fountains terminated its agreement. Thus, the actions of Four Fountains were restricted only by the terms of the contract and were within those bounds.

█ Finally, plaintiffs' contention that Four Fountains' withdrawal as a provider was improper because dual participation in both Medicaid and Medicare is required, and Four Fountains has continued to participate in Medicare after withdrawal from Medicaid is without merit. Plaintiff cites 42 C.F.R. § 442.20, which is subtitled "Additional requirements for agreements with SNF's participating in medicare," and which states that "[t]he medicaid agency's agreement with a SNF participating in medicare must–(1) Provide for the same terms and conditions as medicare certification; and (2) be for the same duration as medicare certification." 42 C.F.R. § 442.-20(a)(1) and (2). It is clear that this regulation codifies administrative convenience. A provider SNF need not participate in Medicare to participate in Medicaid. Section 442.12 sets forth the general requirements for a provider agreement, and section 442.-

20 sets forth additional requirements for those other providers who also participate in Medicare. The mere existence of this supplemental provision clearly indicates that generally, dual participation is not required. Moreover, 42 C.F.R. § 442.202 sets forth the requirements for qualification as a SNF, and dual participation is not among them.

Accordingly, the Motion for Judgment on the Pleadings of Defendants Four Fountains and its Director, Jim Wood, is GRANTED.

## MOTION TO DISMISS OR FOR SUMMARY JUDGMENT OF DEFENDANT IDPA DIRECTOR MILLER

On August 19, 1980, defendant Jeffery Miller, successor as Director of the IDPA, in his official capacity filed a Motion to Dismiss or in the Alternative for Summary Judgment and brief in support thereof. Defendant Miller urged dismissal on the following grounds:

1. Plaintiffs have no property interest in remaining at a particular medicaid provider nursing facility and, therefore, are not entitled to due process prior to transfer.

2. Plaintiffs' cause of action is abated by the death of all plaintiffs.

3. Plaintiffs' claims for relief requesting money damages are barred by the Eleventh Amendment.

4. Plaintiffs' complaint is moot based on the recently adopted Illinois Department of Public Aid Rules 4.1405 and 4.1406. For the following reasons, the defendant Miller's Motion to Dismiss must be granted.

█ First, the damage claims of $15,000 for each plaintiff are barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), reaffirmed the longstanding rule that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." 415 U.S. at 664, 94 S.Ct. at 1356. The extent of this bar is not narrow, *Allah v. Commissioner of*

*Dept. of Correctional Serv's,* 448 F.Supp. 1123 (N.D.N.Y.1978), and applies whenever state officials are sued for money damages which would be satisfied from general state revenues. *Carey v. Quern,* 588 F.2d 230 (7th Cir. 1978). In this action, defendant Miller is being sued for damages alleged to have occurred through his actions or failure to act in the course of his official duties. Miller is not sued in his individual capacity. It is thus clear that the damages are barred by the Eleventh Amendment.

■ Second, it is now clear that plaintiffs had no property interest in remaining at a particular provider facility which entitled them to a due process hearing either under the regulations or the Constitution prior to their transfer. A prior order of this Court on January 8, 1979, denied former IDPA Director Quern's Motion to Dismiss in major part on the grounds that 42 U.S.C. § 1396a(a)(3), 45 C.F.R. § 205.10 and 42 C.F.R. § 405.1121(k)(4) give rise to a property interest in staying at a particular home. In that order, this Court relied on *Klein v. Califano,* 586 F.2d 250 (3d Cir. 1978). Subsequently, the Supreme Court handed down the decision in *O'Bannon v. Town Court Nursing Center,* —— U.S. ——, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). The *Town Court* plaintiffs below had relied upon *Klein* also. The Supreme Court rejected plaintiffs' argument and reliance on *Klein* and held that residents of a nursing home do not possess a property interest in remaining in a particular facility which entitles them to notice and a hearing when the government decertifies that facility. Although the event triggering controversy here was not decertification, the *Town Court* case applies with equal force.

As the Supreme Court stated in *Town Court,* the medicaid provisions relied on by the Court of Appeals in that case and the plaintiffs in this one

> do not confer a right to continued residence in the home of one's choice. 42 U.S.C. § 1396(a)(23) gives recipients the right to choose among a range of *qualified* providers, without governmental interference. By implication, it also con-

fers an absolute right to be free to remain in a home that continues to be qualified. But it clearly does not confer a right on a recipient to enter an unqualified home and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care in a home that has been decertified. Second, although the regulations do protect patients by limiting the circumstances under which a *home* may transfer or discharge a Medicaid recipient, they do not purport to limit the Government's right to make a transfer necessary by decertifying a facility. Finally, since decertification does not reduce or terminate a patient's financial assistance, but merely requires him to use it for care at a different facility, regulations granting recipients the right to a hearing prior to a reduction in financial benefits are irrelevant. [emphasis in original]

100 S.Ct. at 2469. Similarly, the Illinois scheme at the time in question allowed for voluntary provider withdrawal if consistent with the provider agreement. Thus, the recipient had no right to continue to receive benefits at a home which terminated its agreement. In addition, although the regulations may have limited Four Fountains' right to terminate benefits, they did not limit the state's ability to enter an agreement providing for voluntary withdrawal. The Illinois scheme in effect allowed for provider voluntary withdrawal as a part of its plan to provide a range of qualified providers. Such an allowance was equivalent to provisions allowing for decertification of substandard facilities and was nowhere prohibited by the regulations. Finally, allowing provider voluntary withdrawal from the Medicaid program in no way reduced benefits, thereby necessitating notice and a hearing. It merely meant benefits would be available at another qualified provider.

■ Third, considering that the damages requested are barred by the Eleventh Amendment, the motion to dismiss should be granted since the remaining claims for injunctive and declaratory relief abated

with the death of the plaintiffs. The claims against Miller are set forth in claims for relief 10 through 16 and prayers for relief (j), (k) and (*l*). Six claims seek a due process hearing prior to transfer and the seventh seeks to force Miller to prohibit the alleged illegal acts of defendant Four Fountains. For reasons stated above, the Court holds that these requests for injunctive and declaratory relief are purely personal and abated with the deaths of the plaintiffs, notwithstanding the fact that the claims are negated by *Town Court.*

## CONCLUSION

Accordingly, defendants Wood's and Four Fountains' Motions to Dismiss Claim Four Through Nine is GRANTED; plaintiffs' Motion for Appointment and Substitution of Special Administrator is DENIED; defendants Wood's and Four Fountains' Motion for Judgment on the Pleadings is GRANTED; and IDPA Director Miller's Motion to Dismiss is GRANTED. In light of the above result, the Court has no occasion to rule on defendant Four Fountains' Motion to Deny Substitution and Dismiss Complaint.

IT IS SO ORDERED.