Alta BUMPUS, et al.,
Plaintiffs-Appellants,

v.

Donald E. CLARK, et al.,
Defendants-Appellees.

No. 77–2883.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1980.

Reassigned May 10, 1982.

Decided July 16, 1982.

Michael H. Marcus, Portland, Or., for plaintiffs-appellants.

John B. Leahy, Portland, Or., for defendants-appellees.

Before HUG, FLETCHER and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

Plaintiffs are a class of elderly and disabled residents of Edgefield Manor, a nursing home owned and operated by Multnomah County, Oregon and licensed by the State as a Title XIX Intermediate Care Facility. Defendants are Multnomah County, the Multnomah County Board of Commissioners, the Department of Human Resources of the State of Oregon, and several directors and administrators of various state agencies responsible for supervising the provision of medical assistance under Title XIX. The dispute between the parties arises out of an announcement by Multnomah County that it is considering closing Edgefield Manor. Plaintiffs contend that closure of Edgefield Manor would be contrary to their rights under Title XIX, the United States Constitution, and the common law of Oregon. Plaintiffs seek declar-

atory and injunctive relief preventing involuntary transfers and destruction of interpersonal relationships among residents and between residents and staff, or, in the alternative if closure is to be allowed, compelling a reasonably prompt decision regarding the future of Edgefield Manor and requiring that each resident be given notice and an evidentiary hearing prior to any transfer. The district court dismissed plaintiffs' federal claims under Fed.R.Civ.P. 12(b)(6). The district court then dismissed plaintiffs' pendent state law claims, citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966). We affirm.

## TITLE XIX

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, authorizes federal grants to the States to help pay for medical assistance for individuals whose income and resources are insufficient to meet the costs of necessary medical services. Federal assistance is available only to those States which adopt and adhere to an administrative plan for medical assistance satisfying the requirements set forth in § 1396a. The federal government has specified certain minimum categories of medical assistance which must be covered, but beyond that each State has discretion to adopt reasonable standards for determining how much medical assistance will be provided. *See* §§ 1396d(a), 1396a(a)(10), 1396a(a)(17). The overall goal of the Medicaid program is to enable each participating State to provide medical assistance "as far as practicable under the circumstances in such State." Section 1396.

The States generally do not provide the medical assistance directly. Instead, they enter into provider agreements with state-certified health care facilities that are willing to act as health care providers. Provider agreements are for a term of years, with near-automatic renewal unless the provider is decertified for failure to satisfy state requirements or voluntarily terminates the arrangement. This controversy arises out

of the latter event; Multnomah County has decided to close Edgefield Manor and to withdraw as a Medicaid provider.

Plaintiffs contend the closure of Edgefield Manor would violate their rights under Title XIX. They argue that the County is obligated to continue to act as a provider. In the alternative, they argue that the State is obligated to step in and take over to preserve the status quo or, at the very least, to arrange for a collective transfer keeping the current group of residents and staff intact. We conclude that closure of Edgefield Manor would not violate plaintiffs' rights under Title XIX.

 Plaintiffs have no claims against the County under Title XIX. Title XIX does not impose any obligations upon Medicaid providers. The providers are independent contractors whose only obligations under the Medicaid program arise out of their respective provider agreements. *See Roberson v. Wood*, 500 F.Supp. 854, 860 (S.D. Ill.1980):

> Federal law and regulations nowhere provide that once a provider takes on patients, it can never withdraw from the program unless it is decertified by the government. Restrictions on the withdrawal of a provider can only possibly lie . . . in the contract between the patients and the provider or in state law.

Title XIX does impose obligations on those States which choose to participate in the Medicaid program.

 Plaintiffs' first argument against the State is that its failure to act to keep Edgefield Manor open constitutes a violation of plaintiffs' rights under section 1396a(a)(23) to choose their own provider. The answer to this argument is contained in the language of section 1396a(a)(23) itself. Plaintiffs are free to obtain medical assistance "from any institution . . . or person . . . qualified to perform the service or services required . . . *who undertakes to provide him such services.*" (Emphasis added.) Multnomah County no longer wishes to provide Medicaid services. Plaintiffs' free choice rights therefore no longer in-

clude Edgefield Manor. *See Roberson v. Wood*, 500 F.Supp. at 860 (quoted *supra*); *see also O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980) (holding that section 1396a(a)(23) does not confer a right on a recipient to enter or continue to receive benefits at an unqualified home).

■ Plaintiffs next rely on certain parts of the Medicaid "Residents' Bill of Rights," 42 C.F.R. § 442.311, in particular those portions protecting residents' privacy and free association interests, 442.311(g)(1) and (2) and 442.311(i)(1), and provisions preventing transfers and discharges unless for medical reasons or nonpayment, 442.311(c)(1)-(3). However, these regulations pertain only to the ongoing provision of medical services. They do not require the States to limit a provider's right to withdraw upon expiration of the provider agreement, nor do they impose obligations on the States to step in and preserve the status quo whenever a provider exercises its right to withdraw from the program.

■ Plaintiffs' final Title XIX argument is based on section 1396a(a)(19), which provides that a State plan for medical assistance must:

provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided in a manner consistent with simplicity of administration and the best interests of the recipients.

Plaintiffs' argument based on this provision is not without force. Plaintiffs are infirm, elderly, and variously afflicted with heart disease, stroke disorders, chronic brain syndrome and other disabilities. They allege that the closure of Edgefield Manor, and the resulting involuntary transfers and destruction of interpersonal relationships, will cause irreparable emotional and physical injuries. The damage to individuals in plaintiffs' circumstances in terms of physical and emotional deterioration and increased incidence of mortality as a result of "transfer trauma" has been recognized by this and other federal courts on numerous occasions.

*See, e.g., Brede v. Director for Department of Health*, 616 F.2d 407, 412 (9th Cir. 1980); *Yaretsky v. Blum*, 629 F.2d 817, 821 (2d Cir. 1980), *reversed on other grounds*, —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). One expert has testified for plaintiffs that "a transfer of the patients ... [at Edgefield] will quite probably result in the deaths of a substantial number of those patients." Record, Vol. 2, at 276. Plaintiffs contend that any plan for medical assistance which allows mass transfers under the circumstances such as are presented here cannot possibly meet the requirement of section 1396a(a)(19) that care and services be provided "in a manner consistent with simplicity of administration and the best interests of the recipients."

Though we are not unsympathetic to plaintiffs' claims, we conclude that section 1396a(a)(19) is not the proper avenue for their relief. Section 1396a(a)(19) does not give plaintiffs a substantive right to remain at Edgefield Manor or to be transferred as a single group with full staff to a new facility. Section 1396a(a)(19) is not the sort of specific condition for receipt of federal funds which can be said to create substantive rights in Medicaid recipients. *See Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 24, 101 S.Ct. 1531, 1540, 1543, 67 L.Ed.2d 694 (1981):

[I]f Congress intends to impose a condition on the grant of federal moneys it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.

*Id.* at 17, 101 S.Ct. at 1540 (citations omitted).

Section 1396a(a)(19) speaks to two sometimes conflicting goals: simplicity of administration and the best interests of the recipients. Whether a state plan strikes a proper balance between the two is a decision better left to the Department of Health and Human Services and the state agencies responsible for implementing Title XIX. We are not in a position to second-guess the balance chosen by the State of

Oregon every time the balance as applied threatens to work a hardship on a particular group of Medicaid recipients. Nor could the Department of Health and Human Services fairly rely on the ambiguous language of section 1396a(a)(19) to deprive Oregon of its Title XIX funds as a way to force the State to take over Edgefield or to take any other action not clearly required by section 1396a(a) or the regulations promulgated thereunder.

Even if section 1396a(a)(19) is sufficiently clear to give Medicaid recipients some substantive rights against the States, section 1396a(a)(19) does not create the rights claimed here. Section 1396a(a)(19) must be considered in light of the legislative scheme as a whole. The Medicaid program is not intended to meet all the medical needs of recipients. Rather, the goal is to provide medical assistance "as far as practicable under the conditions in [each] State." 42 U.S.C. § 1396. The Supreme Court relied in part on the same phrase appearing in 42 U.S.C. § 601 when deciding that Maryland's maximum grant rule did not violate the requirements of the Aid To Families with Dependent Children (AFDC) Program. *See Dandridge v. Williams*, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970). Involuntary transfers are anticipated as part of the ambitious but limited Medicaid program. *See, e.g.*, 42 U.S.C. § 1396i, providing for decertification whenever a skilled nursing or intermediate care facility no longer satisfies Medicaid requirements.

A state plan for medical assistance could not meet the demands of plaintiffs without imposing significant limitations on the rights of providers to withdraw. Such limitations might scare away a large percentage of otherwise eligible health care facilities, limiting recipients' opportunities to receive care close to home and perhaps even forcing States in some areas to provide care and services directly. In the alternative, a State could allow for free withdrawal but provide for a State buy out and operation of the facility pending location of a new entity willing and qualified to take over as provider. This approach would not be much better for providers, inasmuch as the forced buy outs would still constitute a substantial restraint on voluntary withdrawal, and this approach would impose considerable, complex obligations on the States. Neither approach would assure continuity of staff or residents, since individual staff and residents will always be free to go elsewhere. In summary, it is not clear that Oregon's current medical assistance plan is less consistent with the dual mandate of section 1396a(a)(19) than plaintiffs' implied alternatives would be.

Finally, plaintiffs' argument is inconsistent with the result in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). That case involved certain Medicaid patients' unsuccessful claim to a constitutional right to a hearing before their nursing home could be decertified as a Title XIX skilled nursing facility. Unlike this case, plaintiffs in *O'Bannon* did not rely on section 1396a(a)(19). Still, if the States under the best interests language of section 1396a(a)(19) can be obligated to preserve the status quo when providers withdraw voluntarily, then presumably they should also be obligated to preserve the status quo when withdrawal is involuntary pursuant to decertification. From the patients' point of view the cause of the closure and involuntary transfers is irrelevant; the same dangers of transfer trauma are present in either case. However, section 1396a(a)(19) was not raised in *O'Bannon* for good reason. The complete absence of any hint in the statute of an obligation on participating States to preserve the status quo in the event of decertification strongly suggests that no such obligation was intended. Similarly, in this case, plaintiffs have not pointed to anything in the statute or legislative history which suggests that Congress intended that States would be obligated to preserve the status quo in the event of voluntary withdrawal. We see no reason to believe that section 1396a(a)(19) imposes a special burden on the States if provider withdrawal is voluntary instead of forced. We conclude that Title XIX does not obligate the States to preserve the status quo

or to arrange for collective transfer of residents and staff in the event of voluntary withdrawal.[1]

## CONSTITUTIONAL RIGHT TO REMAIN AT EDGEFIELD

■ Plaintiffs contend that even if Title XIX is no bar to closure of their nursing home, the involuntary transfers and destruction of interpersonal relationships which would result still would be contrary to their constitutional rights to free association, privacy, humane treatment, and life. Plaintiffs have not cited any cases on point to support their claim that either the County's decision to withdraw as a provider or the State's failure to step in and preserve the status quo violates their constitutional rights.

Plaintiffs' assertion of a constitutionally protected right to maintain their interpersonal relationships with each other and with the Edgefield staff is based on two lines of "free association" cases. The first line of cases involves state action intended to hinder or prevent unrelated people from coming together to further civil rights, labor and other causes. *See, e.g., NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *United Mine Workers of America, District 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Lontine v. VanCleave*, 483 F.2d 966 (10th Cir. 1973). The second line of cases involves various attempts to regulate morality by discriminating against non-nuclear family living arrangements. *See, e.g., Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Doherty v. Wilson*, 356 F.Supp. 35 (M.D.Ga.1973); *Moreno v. United States Dept. of Agriculture*, 345 F.Supp. 310 (D.D.C.1972), aff'd, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). These cases fall short of establishing that either the County or the State has an affirmative obligation to maintain an environment in which plaintiffs' interpersonal relationships can continue to thrive.

We recognize that "rights of association are within the ambit of the constitutional protections afforded by the First and Fourteenth Amendments." *Gibson v. Florida Legislative Comm.*, 372 U.S. 539, 543, 83 S.Ct. 889, 892, 9 L.Ed.2d 929 (1963). No such associational rights are involved in this case.

■ Plaintiffs claim that interference with the "social fabric" and "culture of mutual affection" which exist at Edgefield Manor would violate their constitutional rights to privacy in two ways. First, on a literal level, transfers to new facilities would force plaintiffs to depend on a new set of strange faces for intimate care. Plaintiffs claim that "it is only by reason of the sensitivity of the Edgefield staff and mutual affection that residents can preserve their dignity and humanity even though many of them are entirely dependent upon staff for the most intimate human necessities." Second, and more generally, plaintiffs claim the forced transfers would violate their "right to be left alone." Plaintiffs cite in support of their privacy argument a line of substantive due process cases including *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); and *Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). These cases have no bearing on the facts of the instant case. Plaintiffs do not seek the sort of privacy at stake in *Griswold, Roe v. Wade* or *Moore v. East Cleveland*. Nor do they really want to be left alone. Instead, they seek to avoid a foreseeable but undesirable adjustment in the delivery of their medical care and services. They want the State to preserve the status quo. Their constitutional right to privacy, however, provides no basis for such relief.

Plaintiffs argue in effect that the County and State are constitutionally obligated to assist them in the exercise of their rights of

---

1. Having concluded that Title XIX does not give rise to any of the substantive rights claimed by plaintiffs, we do not have to decide whether any such rights would be enforceable by private causes of action (as opposed to action by HEW to withhold federal assistance).

privacy and free association by maintaining an environment where they can continue to receive care as a group with their current staff. This argument is inconsistent with the distinction drawn in *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), and *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), between the existence of a constitutional right (of privacy to decide whether to have an abortion) and a constitutional entitlement to financial assistance in the exercise of such a right. *See McRae*, 448 U.S. at 316, 100 S.Ct. at 2687–88. The Court rejected the privacy claims in both cases, even though the state regulation in *Maher* clearly tended to coerce indigent women to go to term instead of aborting, and even though the Hyde Amendment at issue in *McRae* denied payments for certain medically necessary abortions.

■ Plaintiffs' right to humane treatment claim is based on various circuit and district court cases recognizing a right to treatment enjoyed by people involuntarily confined in nonpenal institutions. *See, e.g., Donaldson v. O'Connor*, 493 F.2d 507, 519–25 (5th Cir. 1974), *vacated*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Spence v. Staras*, 507 F.2d 554, 557 (7th Cir. 1974). Plaintiffs argue that they are de facto in confinement because of their old age, poverty, ill health and general helplessness, and that therefore they should be able to enjoy the same right to humane treatment as do people who are in fact involuntarily confined. We disagree. As with plaintiffs' free association and privacy claims, plaintiffs' claim that a constitutional right to humane treatment encompasses their wish to stay at Edgefield is without legal precedent. Oregon, by electing to participate in Title XIX and thereby assuming responsibility for part of plaintiffs' medical needs, did not become constitutionally bound to provide the additional increment of care and services, not required by Title XIX itself, that would be necessary to preserve the status quo at Edgefield Manor.

■ Plaintiffs also claim that the decision to close Edgefield implicates their substantive constitutional right to life. The Supreme Court's decision in *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (discussed *supra*), precludes a holding that the County's decision to close Edgefield and the State's refusal to step in and preserve the status quo are the sorts of direct state action which constitute deprivations of life or liberty. *O'Bannon* involved decertification of a nursing home instead of a voluntary withdrawal, but in each case the real source of injury to the nursing home residents is the state plan for medical assistance which allows involuntary transfers whenever a provider relationship is terminated for one reason or another. The Supreme Court in O'Bannon "assumed for the purposes of this decision that there is a risk that some residents may encounter severe emotional and physical hardship as a result of the transfer." *Id.* at 784 n.16, 100 S.Ct. at 2475 n.16. We make the same assumption here, and reach the same conclusion that neither the County's decision to withdraw nor the State's failure to preserve the status quo amounts to a deprivation of any interest in life, liberty or property. The County's action in this case no more directly affects plaintiffs than did the action of the State in *O'Bannon*, and the State's role here is even more remote. It would be ironic if providers wishing to withdraw and States wishing to avoid the costs of preserving the status quo could escape the obligations asserted by plaintiffs in this case simply by first letting conditions in the nursing home deteriorate to the point where decertification would be appropriate.

## CONSTITUTIONAL RIGHT TO A PROMPT DECISION AND PRE-TERMINATION HEARINGS

■ Plaintiffs contend that even if they have no statutory or constitutional rights to remain at Edgefield, they still are entitled under Title XIX and federal due process requirements to a reasonably prompt final decision by the County and, if the final decision is to close Edgefield, to individual pretermination hearings to assure that

preparation for the move is individually tailored to meet the special needs of each recipient. We reject both procedural claims.

Plaintiffs' assertion of a right to a prompt decision by the County is based on 42 U.S.C. § 1396a(a)(3) (state plan for medical assistance must grant a hearing to any individual whose claim for medical assistance is denied or is not acted upon with reasonable promptness), 1396a(a)(8) (state plan must provide that medical assistance shall be furnished with reasonable promptness to all eligible individuals), and 1396a(a)(19) (best interests provision discussed *supra*). None of these provisions impose any obligations on the County. *See* discussion at p. 682 *supra*. Nor is Oregon's plan for medical assistance defective simply because it fails to require the County to make a prompt decision regarding Edgefield's future. No one is being denied medical assistance as that phrase is used in section 1396a(a)(3) and (8).

Plaintiffs' claim that they are entitled to individual pretermination hearings is based on 42 C.F.R. § 431.220(a) (state agency must grant a hearing to any applicant who requests a hearing because he believes the agency has terminated, suspended or reduced his Medicaid eligibility or services erroneously) and the Due Process Clause of the United States Constitution. Plaintiffs' claim is squarely answered by *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), first by making clear that a transfer without interruption or reduction in the level of assistance payments does not constitute a reduction or termination in Medicaid services within the meaning of the Medicaid regulations, and second by making clear that residents do not have any constitutionally protected expectation or property interest in receiving care and services at a health care facility that is no longer qualified or willing to participate as a provider. *See id.*

784–89, 100 S.Ct. 2474–77. *O'Bannon* involved decertification rather than voluntary withdrawal by the provider, but the reasoning in *O'Bannon* applies with equal force here. *See Roberson v. Wood*, 500 F.Supp. 854, 862 (S.D.Ill.1980) (applying *O'Bannon* to a voluntary withdrawal situation).

## DISMISSAL OF STATE COMMON LAW CLAIMS

■ Having dismissed plaintiffs' federal, state and constitutional claims under Fed.R.Civ.P. 12(b)(6), the district court dismissed plaintiffs' pendent state common law claims, citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), which provides:

> [P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.... Needless decisions of state law should be avoided.... Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

We find no abuse of discretion. Plaintiffs should pursue their state law claims in state court.

## CONCLUSION

Plaintiffs' federal statutory and constitutional claims were properly dismissed under Fed.R.Civ.P. 12(b)(6). Plaintiffs have neither a federal substantive right to remain at Edgefield Manor nor a federal procedural right to individual hearings prior to transfer. The district court did not abuse its discretion when dismissing plaintiffs' pendent state common law claims.

AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion because this case is moot and no "case or controversy" presently exists over which this court has jurisdiction.[1]

---

1. No formal motion for dismissal has been filed by either party. However, plaintiffs in the present case have filed a Suggestion of Mootness with supporting affidavit. Jurisdictional

issues such as mootness may be raised *sua sponte* by the court. *See Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) (*Suggestion* of Mootness

Plaintiffs originally filed this action seeking declaratory and injunctive relief from the *threatened closure* of Edgefield Manor. Edgefield Manor is now closed. According to affidavit filed by the plaintiffs' attorneys, the last resident of Edgefield was transferred to another nursing facility and Edgefield, itself, was closed on April 20, 1982.

Moreover, the ultimate closure of Edgefield Manor occurred with plaintiffs' full assistance. Plaintiffs provided the County with much of the technical information necessary to minimize the risk of harm inherent in these patient transfers. They negotiated the conditions of each of the transfers with the County according to rules which plaintiffs counsel were successful in promoting for all Oregon nursing home residents. Accordingly, no remedy sought by the plaintiffs in this suit remains to be granted. The "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). When during the pendency of an appeal events occur such as those described here that obviate the possibility of meaningful relief, the court must dismiss the appeal as moot, *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), and vacate the lower court judgment as well, *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979). Under certain limited circumstances a case remains justiciable though the issue before the court is moot, to wit: the challenged action is too brief in duration to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the complaining party will be subject to the same action again. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). No such circumstances exist here. I would therefore dismiss the appeal as moot and vacate the judgment of the district court.

filed by party); *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (parties requested by the court to brief the issue of mootness).